United States District Court
Southern District of Texas
**ENTERED**
August 02, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

CLAUDIO LOPEZ QUIROGA,    §
                          §
    Plaintiff,            §
                          §
VS.                       §    CIV. NO. 7:22-cv-00188
                          §
KILOLO KIJAKAZI,          §
Acting Commissioner of Social Security  §
   Administration,         §
                          §
    Defendant.            §

## REPORT & RECOMMENDATION

Plaintiff, Claudio Lopez Quiroga, seeks judicial review of a final adverse decision of the

Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).  This matter has been referred to

the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b).

On February 17, 2023, Plaintiff filed Memorandum in support of Plaintiff's Motion for Summary

Judgment.  (Dkt. No. 13.)  On March 14, 2023, Defendant filed Motion for Summary Judgment

and Response to Plaintiff's Memorandum/Motion for Summary Judgment.  (Dkt. No. 14.)  After

review of said filings, this case is ripe for disposition on the record.

Plaintiff claims the Commissioner of the Social Security Administration (SSA) (the

"Commissioner") improperly found that Plaintiff was not entitled to disability insurance benefits

under Title II of the Social Security Act.  *See* 42 U.S.C. §§ 401-434.   In particular, Plaintiff argues

that the Administrative Law Judge (ALJ) failed to take into consideration medical assessment of

Plaintiff's personal physician in determining that Plaintiff's physical impairments or combination

of impairments did not meet one of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P,

1

Appendix 1 (*see* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526); and the ALJ again failed to

consider the opinion of Plaintiff's personal physician in making a finding that Plaintiff has the

residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b),

with specified limitations.  (Dkt. No. 13 at 4-5, 9.)  The Commissioner counters that substantial

evidence supports the ALJ's findings that Plaintiff was not disabled and the ALJ considered the

personal physician's assessment and explained why the ALJ was not persuaded by said assessment

in light of other medical assessments and evidence.  (Dkt. No. 14 at 2.)

A review of the record establishes that substantial evidence supports the ALJ's findings as

to Plaintiff's physical impairments not meeting a listed impairment within the noted appendix, the

ALJ's finding as to the residual functional capacity, and that the ALJ adequately explained why

Plaintiff's personal physician's report was not persuasive for said determination.  Therefore, based

on review of the record and relevant law, the undersigned recommends Defendant's motion for

summary judgment (Dkt. No. 14) should be **GRANTED** and Plaintiff's motion for summary

judgment (Dkt. No. 13) should be **DENIED**.  It is further recommended that Plaintiff's Complaint

(Dkt. No. 1-2) should be **DISMISSED** and this case be closed.

## I.   PROCEEDINGS AND ARGUMENTS PRESENTED

### a.   <u>Proceedings before the Administrative Law Judge</u>

On November 19, 2019, Plaintiff filed for disability insurance benefits under Title II,

alleging disability since September 24, 2019 (at the age of 50) due to a 2001 back surgery, an

abdominal hernia, and gout.  (Dkt. No. 5-1 at 102-110, Ex. 1A.)[1]  On or about January 13, 2020,

Plaintiff's application was denied at the initial level.  (*Id.*)  There was a primary diagnosis of back

---

[1] Citations are to the Social Security proceeding as filed in the CM/ECF system with cross-references to
the ALJ exhibit numbers when warranted.

disorder at the initial level, which included a January 2020 consultative examination report from Dr. Calvo, III. (*Id.* at 102-109, Ex. 1A) The Plaintiff's residual functional capacity (RFC) was set to include ability to lift/carry 20 pounds occasionally, 10 pounds frequently, stand/walk for about six hours of an eight-hour workday, and sit for about six hours of a normal eight-hour workday. (*Id.* at 106-07, Ex. 1A.) It was further concluded that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (*Id.* at 107, Ex. 1A.)

On June 4, 2020, the reconsideration of the initial denial was denied as well. This time around, Plaintiff provided records from his primary doctor, Dr. Garcia Guerra. (Dkt. No. 5-1 at 116, Ex. 3A.) The RFC conclusions were the same as the ones set out at the initial hearing noted above. (*Id.* at 116-18, Ex. 3A.) Subsequently, on February 12, 2020, Plaintiff requested a hearing before an ALJ after these findings. (*Id.* at 126, Ex. 3B.)

On December 10, 2020, the ALJ conducted a formal hearing. Plaintiff was present and represented by current counsel. Also present were a vocational expert, John Reno, and Plaintiff's wife, Jessica Lopez, each who would be called to testify. (Dkt. No. 5-1 at 66.) During the hearing, Plaintiff explained that he is disabled since he has "five herniated discs," "a plastic bone that was inserted in [his] spine," and has "had operation in majority half of my body." (Dkt. No. 5-1 at 73.) Plaintiff clarified that he is able to walk for an hour but then needs to rest due to weakness in left leg and "that's also the reason why I have to use a cane." (*Id.*) Plaintiff initially claimed the cane was prescribed but clarified that the cane was not prescribed but he cannot walk without it. (*Id.* at 73, 76.) Plaintiff explained that his typical day involves waking up at five or six in the morning to take his medication, then walking around for a bit, and then having to sit down. Plaintiff expounded that "it's like that throughout the day." (*Id.* at 74.) Plaintiff explained that he does

3

take medications[2] for pain management and said medications cause side effects such as "dizziness" and "upset stomach." (*Id*.) Plaintiff stated that the back operation occurred in 2002 but he was able to return to work. Plaintiff further stated that he is seeing a doctor in Mexico, Dr. Jose Ruben Garcia Guerra (Dr. Garcia Guerra), and that said doctor provided Plaintiff medication. (*Id*. at 78.) (Records from said doctor were provided for ALJ's review and consideration. (*See* Dkt. No. 5-1 at 347-57, Ex. 3F; Dkt No. 5-1 at 358-65, Ex. 4F.)) Plaintiff clarified that Dr. Garcia Guerra advised him that he could not go back to work and that his ailments consist of "back pain all around the waist area, legs, shoulders, neck, and gout" and the pain is constant. (*Id*. at 78.) Plaintiff explained that his wife has to help him wake-up in the morning, get dressed, cook for him, and place his shoes on due to his physical ailments. (*Id*. at 80.) Plaintiff also set out that he cannot lift things, and he has a problem with walking and standing. (*Id*. at 80-81.) Plaintiff also explained that the medication he receives from his personal doctor is "just to control the pain." (*Id*. at 82.) Upon questions from his counsel, Plaintiff explained that he refused to walk on his heels when meeting with a doctor for review of the disability claim because Plaintiff had a lot of pain. Plaintiff also explained he was afraid to squat, that he cannot hop up and down, and that also cannot walk on his toes also because of the pain. (*Id*. at 83.)

Plaintiff's wife, Jessica Lopez, also testified on his behalf. Mrs. Lopez testified as to Plaintiff's operation from 2002 when Plaintiff had a spinal fusion due to a fall at his place of employment. (Dkt. No. 5-1 at 85.) Mrs. Lopez explained how she helps her husband by getting him up, providing him his medications, making his meals, helping him bathe, helping him get dressed, and helping him put on shoes. (*Id*. at 86.) Mrs. Lopez stated that her husband "can't bend

---

[2] During the testimony of Plaintiff, the ALJ set out the prescribed medications were set out in Exhibit 19E, which is a series of prescriptions provided to Plaintiff by his personal physician, Dr. Garcia Guerra. (Dkt. No. 5-1 at 74; *see also* Dkt. No. 5-1 at 326-330, Ex. 19E.)

or squat or anything."   Mrs. Lopez clarified that the Plaintiff takes Tylenol for pain, as well as

Dolo NeuroBion.  (*Id.* at 86-87.)  Mrs. Lopez also explained the other medications the Plaintiff

takes include an anticoagulant and and a shot for pain and inflammation; further, Plaintiff also

takes Tylex and Advil.  She also explained the side-effects from the different medications such as

dizziness and diarrhea.  (*Id.* at 87.)  Mrs. Lopez explained that her husband's day consists of lying

down five to six times for 30 minutes or an hour and that her husband cannot sleep well due the

constant pain he is in.  (*Id.* at 88.)  Mrs. Lopez also stated that while the cane is not prescribed,

Plaintiff cannot walk without the cane and when he does not have the cane, he has to hold on to

his wife for support.  (*Id.* at 89.)

Afterwards, the vocational expert, John Reno, testified.  During this portion of the hearing,

the ALJ clarified from Plaintiff that when Plaintiff worked in construction and as a carpenter

helper, at most, Plaintiff would lift 40 pounds. (Dkt. No. 5-1 at 91-92.)  ALJ also clarified from

the Plaintiff that Plaintiff worked as forklift operator.   Based on those answers, the ALJ classified

the relevant past positions of employment for Plaintiff as forklift operator, construction, and

carpenter helper.  (*Id.* at 95.)  The vocational expert would classify those jobs as pipeline laborer

(DOT 914.687-010)[3], construction worker I (DOT 869.664-014), and industrial truck operator

(DOT 921.683-050).  (*Id.*)  The ALJ then inquired from the vocational expert if, assuming an

individual had the claimant's age and education, could such an individual perform full range of

work, with light exertional level, occasional climbing of ramps, stairs, ladders, ropes and scaffolds;

occasional balancing, stooping, kneeling, crouching, and crawling; to which the vocational expert

---

[3] DOT is abbreviation for *Dictionary of Occupational Titles*.  "The Department of Labor promulgated the
DOT to provide 'standardized occupational information to support job placement activities.'" *Jacquelyn
S. v. Comm's of Soc. Sec. Admin.*, No. 3:18-CV-01022-L-BT, 2019 WL 4359412, at *6 n.3 (N.D. Tex. Aug.
27, 2019) (citing Dep't of Labor, D.O.T. at xv (4th ed. 1991)), *report and rec. adopted*, No. 3:18-CV-1022-
L, 2019 WL 4318885 (N.D. Tex. Sept. 12, 2019).

noted that past work as industrial truck operator cannot be performed per DOT but could be performed based on how claimant testified he performed such work; but construction worker or pipeline laborer could not be performed as defined by DOT or as testified to by Plaintiff. (*Id*. at 94-95.)

For the second hypothetical, the ALJ set out the same as before but with limitation that individual is standing and walking is reduced to four hours in an eight-hour workday and individual can sit for six hours in eight-hour workday, and the individual requires the ability to alternate sitting and standing every 30 minutes; with these limitations, the vocational expert testified that Plaintiff's past work could not be performed either as performed based on Plaintiff's testimony or per DOT guidelines. (*Id*. at 97.) When asked by ALJ if there are other jobs at the light exertional level such an individual in the second hypothetical could perform, the vocational expert explained such an individual could find a position as officer helper (DOT 239.567-0110; approx. 37,000 positions nationwide) or cashier II (DOT 211.462-010; approx. 3,200,000 positions nationwide).[4] (*Id*. at 98.) The ALJ then inquired if the limitations as set out in the other two hypotheticals are the same, "but add that a cane is required for ambulation and standing," would such an individual be able to perform a position within the national economy, to which the vocational expert testified that past work could not be performed and position of officer helper and cashier II "would [each] be precluded" as well. (Dkt. No. 5-1 at 99.)

Upon questioning from Plaintiff's counsel, the vocational expert testified that there is no position in the national economy that could be performed with the additional limitation of someone

---

[4] In each instance, the vocational expert reduced the number of jobs available as set out by Bureau of Labor Statistics due to limitations within the hypothetical presented by ALJ. (*Id*. at 98.)

who has to rest every one to two hours, five to six times a day. (*Id.* at 99-100.)  No further evidence or testimony was presented after the testimony of the vocational expert.

The ALJ issued her opinion on March 1, 2021.  (*See generally* Dkt. No. 5-1 at 33-43.)  The ALJ followed the five-step sequential evaluation process in determining whether or not the Plaintiff is disabled.  The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since September 24, 2019, the onset date. (Dkt. No. 5-1 at 35.)  The ALJ then found that Plaintiff had severe impairments at step two, specifically, degenerative disc disease of the cervical thoracic and lumbar spine, and an abdominal hernia.  (*Id.*)  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment.  (*Id.* at 36-37.)  ALJ specifically considered the requirements of Listing 1.02 ("Major Dysfunction of a Joint") and 1.04 ("Disorders of the Spine") (*id.* at 36-39) and concluded that the medical evidence did not "contain the objective signs, symptoms, findings or the degree of functional limitations necessary" to meet or equal listing in either 1.02 or 1.04 (*id.* at 36).  The ALJ then concluded that the Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b)[5] except Plaintiff can stand and walk four hours, and sit for six hours, in an eight-hour workday and requires the ability to alternate positions between sitting and standing every 30 minutes.  (Dkt. No. 5-1 at 37.)  Plaintiff can also occasionally balance, stoop, kneel, crouch, crawl, climb ramps, stairs, ladders, ropes, and scaffolds.  (*Id.*)  The ALJ also concluded

---

[5] Under the Code of Federal Regulations, "light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight may be very little, a job is in this category when it requires a good deal of walking and standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

that based on Plaintiff's RFC, Plaintiff is unable to perform any past relevant work. (*Id*. at 41.) Nonetheless, the ALJ found that based on the Plaintiff's age, education, work experience, and RFC, there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (*Id*. at 42.) Such jobs include office helper (DOT 239.567-010) and cashier II (DOT 211.462-010). (*Id*. at 43.) Based on these conclusions, ALJ found that Plaintiff is not disabled and denied Plaintiff's application for disability insurance benefits. (*Id*.)

The decision was upheld upon review by the Commissioner and Plaintiff subsequently appealed said decision for judicial review.

### b. Summary of the Pleadings

In Plaintiff's motion for summary judgment, Plaintiff argues that the ALJ's findings at step three were not supported by substantial evidence. (Dkt. No. 13 at 5.) Specifically, the Plaintiff argues that the ALJ failed to consider the treating physician medical records when concluding that Plaintiff did not meet the requirements of Listing 1.02 and 1.04. (*Id*.) Plaintiff argues that if the ALJ properly considered the treating physician records, the ALJ would have concluded that Plaintiff met the Listing 1.02 and 1.04 requirements. (Dkt. No. 13 at 5-7.) And, because Plaintiff argues that the evidence establishes disability at step three, continuing to step four and step five was in error. (*Id*. at 9-10.)

In response to this first claim of error, the Commissioner argues that the ALJ properly concluded that Plaintiff did not meet the Listing requirements based on the totality of the evidence. (Dkt. No. 14 at 8-9.) Specifically, the Commissioner argues that the ALJ did consider the treating physician's evidence but did not find it persuasive. (*Id*. at 10.) The Commissioner contends that the ALJ did not err in finding the treating physician's evidence unpersuasive because such conclusion was properly reached based on the evidence in the record. (*Id*. at 10-12.) As such, the

ALJ properly proceeded to steps four and five, ultimately concluding that Plaintiff could still perform jobs within the relevant economy based on his RFC. (*Id.*)

Plaintiff also argues that even if there was no error in the step three determination, there was error in the ALJ's RFC finding at step four. (Dkt. No. 14 at 9.) As such, the Plaintiff argues that because the ALJ erred in the RFC determination, the ALJ improperly concluded that Plaintiff has the capacity to perform jobs that he is unable to perform based on Plaintiff's medical records.

Specifically, Plaintiff argues that it was error for the ALJ to make the RFC determination primarily based on whether Plaintiff was prescribed a cane or not. (Dkt. No. 13 at 6.) Plaintiff argues that the ALJ should have considered the fact that, even though not prescribed, Plaintiff testified that the cane was necessary due to his gait. (*Id.*) Further, the Plaintiff argues that the ALJ should have considered the fact that Plaintiff's treating physician did prescribe a cane shortly after the ALJ hearing. (*Id.*) The Plaintiff takes issue with the fact that the ALJ primarily relied on Dr. Calvo's findings in reaching the RFC and disability determination. (*Id.* at 8-10.)

In response to this second claim, the Commissioner argues that the new medical reports attached to Plaintiff's motion are not properly filed before this Court for the purpose of considering whether substantial evidence supports the ALJ's findings. (Dkt. No. 14 at 2.) Specifically, the Commissioner argues that the ALJ decision was reached on March 1, 2021, and the documents attached and referenced within the motion concern 2022 materials that are not sufficient to establish remand. (*Id.* at 3.) The Commissioner argues that such evidence is insufficient to establish remand because the 2022 evidence does not relate to the period for which the benefits were denied. (*Id.*)

## II.   LAW AND ANALYSIS

### a.   <u>Five-Step Sequential Process</u>

The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citing 20 C.F.R. § 404.1572(a), (b)).

To determine if someone is disabled for purposes of a benefits determination there is a five-step sequential process:

> (1) whether the claimant is currently engaged in substantial gainful activity, (2) whether the claimant has a sever impairment, (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1, (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.

*Davis v. Saul*, No. 4:19-CV-2663, 2020 WL 658712, at *2 (S.D. Tex. Nov. 10, 2020) (citing *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)); *see also* 20 C.F.R. § 404.1520(a)-(e). After step 3, there is an assessment of a plaintiff's residual functional capacity (RFC), essentially an assessment of an individual's ability to work prior to going to the last two steps. SSR 96-8p, 1996 WL 374814, at *1 (July 2, 1996).[6] "RFC does not represent the *least* an individual can do

---

[6] SSR is in reference to the Social Security Rulings. "Through SSRs, we [the Social Security Administration (SSA)] convey to the public SSA precedential decisions relating to the Federal old age, survivors, disability, supplemental security income, and special veterans benefits programs." SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The SSA "may base SSRs on determinations or decisions made at all levels of administrative adjudication, Federal court decisions, Commissioner's decisions, opinions of the Office of General Counsel, or other interpretations of the law and regulations." *Id.* Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. *Id.* (citing 20 C.F.R. § 402.35(b)(1)); *see also Sullivan v. Zebley*, 493 U.S.

despite his or her limitations or restrictions, but the *most*, . . . ." *Id*. at *2. "This assessment of RFC is used at Step 4 . . . to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work identified in the national economy, considering his or her age, education, and work experience." *Id.* at *2.

The claimant bears the burden of proof in the first four steps. *Masterson*, 309 F.3d at 272. At step 5, the burden is on the government to establish that the evidence demonstrates other jobs exists within the national economy. *Id*.; *see also* 20 C.F.R. § 404.1560(c)(2). If Commissioner meets this burden, "[t]he burden of proof then returns to the claimant to rebut the Commissioner's showing." *Masterson*, 309 F.3d at 272.

### b.  Standard of Review of Five-Step Process

Summary judgment is proper when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Although "[t]he same standard rules governing summary judgments apply to a review of an administrative denial of social security benefits," appellate review of social security matters is limited by 42 U.S.C. § 405(g).[7] *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 500 (S.D. Tex. 2003) (citations omitted).

Once the movant for summary judgment presents "a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software, Inc.*, 232

---

521, 530 n.9 (1990).

[7] For example, although under Federal Rule of Civil Procedure 56 a court can look outside of the pleadings to depositions, answers to interrogatories, admissions on file, and affidavits for evidence, 42 U.S.C. § 405(g) limits a court's review of a social security matter to the administrative record. *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981) ("No evidence external to the administrative record is generally admissible in reviewing an administrative action pursuant to 42 U.S.C. [§] 405(g).").

F.3d 473, 477 (5th Cir. 2000) (citation omitted).  Further, "[w]hen parties file cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Rangel v. Saul*, No. 5:19-CV-31, 2020 WL 3546875, at *2 (S.D. Tex. Mar. 8, 2020) (citing *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (internal citation and quotation marks omitted)).  Each party "bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)).  "If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Id.* (citations omitted).

A district court has the power to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the case for rehearing.  42 U.S.C. § 405(g).  However, a court reviewing the Commissioner's denial of social security benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards.  *See* 42 U.S.C. § 405(g); *see e.g., Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

As noted in *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted):

The judicial role in social security matters, including appellate review, is limited by 42 U.S.C. § 405(g) to a determination whether there is substantial evidence in the record considered as a whole to support the factual finding of the Secretary.  We may not retry factual issues, reweigh evidence, or substitute our judgment for that of the fact finder.  However, we will set aside fact findings which are not supported by substantial evidence, and will correct errors of law.

To that end, "[s]ubstantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (per curiam).  If the findings are supported

by substantial evidence, they are conclusive, and a court must affirm.  *Id.* (citations omitted).  A

reviewing court must examine the entire record, including evidence favorable to the Commissioner

as well as contrary evidence.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  "While there

is evidence in the record that could have permitted the ALJ to reach a different conclusion

regarding whether the Plaintiff's impairments render [the plaintiff] disabled," if the ALJ applied

the correct legal standard and if there is substantial evidence in support of the decision, said

decision will be affirmed.  *Stuckey v. Comm'r of Soc. Sec.*, No. CV 21-200-BAJ-EWD, 2022 WL

10758959, at *5 (M.D. La. Sept. 2, 2022).

> **c.  Issue of New Medical Evidence**

Before addressing the merits of Plaintiff's arguments, this court considers Commissioner's

assertion that a court cannot consider the materials attached and referenced within the Plaintiff's

motion for summary judgment because the Plaintiff did not show that the materials were relevant

to the time period of the disability determination.  Pursuant to sentence six of 42 U.S.C. § 405(g),

a court may remand a case if a party makes a showing that there is new evidence that is material

and that there was good cause for the failure to present such evidence before the agency.  Under a

sentence six remand, the court does not rule in any way as to the correctness of the ALJ decision;

rather, the court remands because new evidence has come to light that was not available to the

plaintiff at the time of the prior administrative proceedings, and such new evidence might have

changed the outcome of the proceedings.  *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *see also*

*Ripley v Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

For evidence to be considered "material," it must be relevant and probative.  *Chaney v.*

*Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981).  "In this context, material evidence creates 'a

reasonable probability that it would have changed the outcome of the [Commissioner's] decision.'" *Thomas v. Colvin*, 587 F. App'x 162, 165 (5th Cir. 2014) (quoting *Bradly v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987)).  Therefore, materiality relates "to the time period for which benefits were denied" and is not concerned with "evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Id.* (quoting *Bradley*, 809 F.2d at 1058; 20 C.F.R. §§ 404.976(b)(1)); *see also Latham v. Shalala*, 36 F.3d 482, 483-84 (5th Cir. 1994) (noting that records are not material under sentence six if they do not relate to the period for which benefits were denied).

The fact that a report is of recent origin is not sufficient to show "good cause" for remand. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989).  Rather, good cause for remand exists "[w]here, for example, the tape recording of the claimant's oral hearing is lost or inaudible, or cannot otherwise be transcribed, or where the claimant's files cannot be located or are incomplete." *Dudley v. Astrue*, 246 F. App'x 249, 252 (5th Cir. 2007) (citations omitted).  As such, "good cause" consists of circumstances which the claimant could not obtain proper review under 42 U.S.C. § 405(g) without remand.  *See McKenzie v. Astrue*, 442 F. App'x 161, 163 (5th Cir. 2011).

The evidence attached to Plaintiff's Motion includes: (1) a medical record in Spanish from Dr. Garcia Guerra dated December 6, 2022 (Dkt. No. 13 at 11); (2) a "certificate of disability" from Dr. Garcia Guerra explaining Plaintiff's injury that resulted in back surgery and herniated discs, as well as Plaintiff's currently prescribed medications along with a statement that "these injuries for [Plaintiff] have caused him to have permanent disabilities, which forbid him to perform normal day to day activities, and normal husband activities" (*id.* at 12-13), and; (3) prescription forms from Dr. Garcia Guerra dated between April 7, 2022, to November 20, 2022 (*id.* at 14-19).

Most of the evidence attached to the Plaintiff's petition is not new because it is contained

in the administrative record, making it insufficient to justify a sentence six remand. *See Thomas*, 587 F. App'x at 165.  Specifically, the records provided from Dr. Garcia Guerra are substantively the same as those submitted from Dr. Garcia Guerra in the administrative record.  (*Compare* Dkt. No. 13 at 11-18 *with* Dkt. No. 5-1 at 343-357 (Dkt. No. 3F) and Dkt. No. 5-1 at 358-65 (Ex. 4F).)

In regard to the letter issued on December 6, 2022, Dr. Garcia Guerra does set out that Plaintiff has a lesion on the spinal cervix, consistent with bilateral neuropathy for herniated disks (C3-C4, C4-C5, C5-C6), and lumbar radiculopathy on two herniated disks (L4-L5, L5-S1).  *See* Dkt. No. 13 at 11 (English translation of portion of Spanish letter provided by Plaintiff).  Said conclusions were not presented to the ALJ in the record provided; however, these medical conclusions fall outside of the relevant time period for Plaintiff's disability determination as it is provided after the ALJ's determination from March 1, 2021.  *See Thomas*, 587 F. App'x at 165; *Latham*, 36 F.3d at 483-84.

Therefore, evidence presented by Plaintiff is neither new or material and does not justify a line six remand pursuant to 42 U.S.C. § 405(g).

**d.  <u>Review of Step Three Determination</u>**

Plaintiff argues that the ALJ erred in failing to find that the Plaintiff's impairments do not meet or equal a listed impairment, specifically those impairments in Listing 1.02 and 1.04. Commissioner contends that Plaintiff failed to demonstrate that any of his impairments met all the specified medical criteria of the Listing of Impairments.

At step three, Plaintiff has the burden of establishing that his or her impairment or combination of impairments is of a severity that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  If the Plaintiff's impairment or combination of impairments is of a severity

to meet or medically equal the criteria of a listing and meets the duration requirement set out in 20 C.F.R. § 404.1509, then the claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(iii), (d).  If the impairment does not meet a listing, the analysis proceeds to determination of the residual functional capacity.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f).

Plaintiff's impairment matches a listing when it meets "*all* the specified medical criteria." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis original).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* (citation and footnote omitted).  If the plaintiff's impairment does not match a listing, then the plaintiff must show that his or her "unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment" by presenting "medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id*. at 531.  "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Id*. at 532.  The reason for this standard is to create a presumption of disability such that, upon a determination of disability at step three, an inquiry into step four would be unnecessary. *Id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).  Since meeting a listing leads to a determination of being disabled without any further examination, "the criteria in the Listings are both 'demanding and stringent.'" *McCullough v. Berryhill*, No. SA-18-CV-00128-ESC, 2019 WL 1431124, at *5 (W.D. Tex. Mar. 29, 2019) (quoting *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)).

The ALJ is not required to articulate the detailed reasons that support his findings under step three. *Bullock v. Astrue*, 277 F. App'x 325, 327–28 (5th Cir. 2007). "Thus, the sole question before this court is whether substantial evidence supports the ALJ's finding" that Plaintiff did not meet or equal a Listing. *Id.* (citing *Selders v. Sullivan*, 914 F.2d 614, 619–20 (5th Cir. 1990)).

i.   Listing 1.02 – Major Dysfunction of a Joint

Plaintiff argues that the evidence on the record meets the criteria in Listing 1.02, Major

Dysfunction of a Joint.  Major dysfunction of a joint due to any cause is:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony
> or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of
> limitation of motion or other abnormal motion of the affected joint(s), and findings
> on appropriate medically acceptable imaging of joint space narrowing, bony
> destruction, or ankylosis of the affected joint(s). With:
>
> > A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee,
> > or ankle), resulting in inability to ambulate effectively, as defined in
> > 1.00B2b[8]; or
> >
> > B. Involvement of one major peripheral joint in each upper extremity (i.e.,
> > shoulder, elbow, or wrist-hand), resulting in inability to perform fine and
> > gross movements effectively, as defined in 1.00B2c.[9]

---

[8] Section 1.00B2b:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to
> walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to
> independently initiate, sustain, or complete activities.  Ineffective ambulation is defined
> generally as having insufficient lower extremity functioning (see 1.00J) to permit
> independent ambulation without the use of a hand-held assistive device(s) that limits the
> functioning of both upper extremities. . . .
>
> (2) . . . . Therefore, example of ineffective ambulation included, but not limited to, the inability
> to walk without the use of the walker, two crutches or two canes, the inability to walk a
> block a reasonable pace on rough or uneven surfaces, the inability to use standard public
> transportation, the inability to carry out routine ambulatory activities, such as shopping and
> banking, and the inability to climb a few steps at a reasonable pace with the use of single
> hand rail.  The ability to walk independently about one's home without use of assistive
> devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, Appx. 1, §1.00B2c (2021).

[9] Section 1.00B2c:

> . . . . Inability to perform fine and gross movements effectively means an extreme loss of
> function of both upper extremities, i.e., an impairment(s) that interferes very seriously with
> the individual's ability to independently initiate, sustain, or complete activities. To use their
> upper extremities effectively, individuals must be capable of sustaining such functions as
> reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily
> living. Therefore, examples of inability to perform fine and gross movements effectively
> include, but are not limited to, the inability to prepare a simple meal and feed oneself, the
> inability to take care of personal hygiene, the inability to sort and handle papers or files,

20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.02 (2021).  To satisfy this listing, Plaintiff must establish: (1) bilateral cane or walker use, as opposed to single hand cane use; and (2) that the ambulation restriction lasted, or can be expected to last, twelve months. *Villarreal v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-00288, 2018 WL 1833002, at *3 (W.D. Tex. Apr. 16, 2018); *Aguilar v. Astrue*, No. 13-CV-00017, 2014 WL 5500689, at *6-9 (S.D. Tex. Oct. 29, 2014) (bilateral cane or walker use required); *Zimmer v. Colvin*, No. 14-CV-347, 2016 WL 310277, at *13 (E.D. Tex. Jan. 26, 2016) (twelve-month duration requirement for Listing 1.02). The use of a single cane does not qualify an individual for Listing 1.02. *Bullock*, 277 F. App'x at 328 (finding a plaintiff that was able to walk with the help of a single cane did not satisfy Listing 1.02); *see also Villarreal*, 2018 WL 1833002, at *4 (same).

The ALJ found that the Plaintiff did not meet the Listing 1.02 requirements because "there is no evidence of gross anatomical deformity in any of claimant's joints. . . . [and] no findings on appropriately acceptable imaging of joint space narrowing, bony deconstruction, or ankylosis of any joints." (Dkt. No. 5-1 at 36.) The ALJ considered the Plaintiff's chronic pain and stiffness but concluded "there is no evidence that the claimant requires the use of a hand-held assistive device that limits the functioning of *both* upper extremities." (*Id.* at 36-37 (emphasis in original).) Further, the ALJ found that "there is no evidence of an extreme loss of function of *both* upper extremities." (*Id.* (emphasis in original).) The ALJ concluded that overall, the record "generally shows a full range of motion in his extremities, normal muscle strength and tone without atrophy, normal reflexes, intact sensation, no major coordination deficits, and no neurological weakness in

---

and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. Pt. 404, Subpt. P, Appx. 1, §1.00B2c (2021).

the claimant's extremities." (*Id.* (citing to Ex. 1F – "Consultative Examination Report, dated 01/08/2020 to 01/08/2020, from Dionisio B. Calvo III, M.D.").)

Despite Plaintiff's contentions, the substantial evidence in the record supports the ALJ's conclusion that Plaintiff does not meet the criteria in Listing 1.02. Plaintiff primarily asserts that he meets Listing 1.02 criteria because he uses a cane as support due to his gout. (Dkt. No. 13 at 4.) Importantly, the Plaintiff does not contend, and the medical records do not show that Plaintiff uses a walker or requires bilateral cane use. The use of a single cane does not qualify an individual for Listing 1.02. *See Bullock*, 277 F. App'x at 328. Further, while there is evidence that Plaintiff chooses to use a cane as support at times, there is no evidence showing that such cane is necessary or that Plaintiff always uses the cane. *Davis*, 2020 WL 6585712, at *5 (holding that the ALJ properly concluded that Plaintiff did not meet Listing 1.02 criteria where no medical records supported a finding that Plaintiff used the cane all the time or otherwise required a cane). In fact, the state examiner, Dr. Wright, after review of Plaintiff on January 8, 2020, indicated that Plaintiff did not need the cane to ambulate and was able to sit, stand, move about, and transfer from the examining table. (Dkt. No. 5-1 at 107, Ex. 1A.)

As recounted by the ALJ, Plaintiff's medical records indicate that Plaintiff has full control and usage of his upper extremities, no loss of function, normal muscle strength, normal reflexes, and a full range of motion. As such, the court cannot say that "no credible evidentiary choices or medical findings support the [ALJ's] decision" as to Listing 1.02. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (holding that a finding of no substantial evidence to support the decision is appropriate only if "no credible evidentiary choices or medical findings support the decision"); *see also Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (same).

      ii.     <u>Listing 1.04 – Disorders of the Spine</u>

Plaintiff argues that the evidence in the record satisfies Listing 1.04, Disorders of the Spine,

and that the ALJ's conclusion otherwise is not supported by sufficient evidence on the record.

Listing 1.04:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis,
> spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral
> fracture), resulting in compromise of a nerve root (including the cauda equina) or
> the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic
> > distribution of pain, limitation of motion of the spine, motor loss (atrophy
> > with associated muscle weakness or muscle weakness) accompanied by
> > sensory or reflex loss and, if there is involvement of the lower back, positive
> > straight-leg raising test (sitting and supine); or
> >
> > B. Spinal arachnoiditis, confirmed by an operative note or pathology report
> > of tissue biopsy, or by appropriate medically acceptable imaging,
> > manifested by severe burning or painful dysesthesia, resulting in the need
> > for changes in position or posture more than once every 2 hours; or
> >
> > C. Lumbar spinal stenosis resulting in pseudoclaudication, established by
> > findings on appropriate medically acceptable imaging, manifested by
> > chronic nonradicular pain and weakness, and resulting in inability to
> > ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04 (2021). The ALJ found Plaintiff did not meet the

requirements of listing 1.04 because "the claimant's impairments did not rise to the level of

severity contemplated by this listing." (Dkt. No. 5-1 at 37.) The ALJ specifically concluded that

there was "no evidence of a disorder of the spine resulting in compromise of a nerve root or the

spinal cord. . . . [ ] no evidence of a nerve root compression accompanied by sensory or reflex loss

. . . ." (*Id.*) Further, the ALJ found that there was no "evidence of a positive seated and supine

straight leg raise, as required by 1.04A." (*Id.*) The ALJ also concluded the record contained no

evidence of spinal arachnoiditis, as required by 1.04B, and no evidence of lumbar spinal stenosis

under 1.04C. (*Id.*) Overall, the ALJ concluded that the evidence established in the record showed

that "[p]hysical examinations were generally remarkable, documenting unassisted gait, normal motor and fine manipulation skills, normal and symmetric reflexes, intact sensation, full muscle strength and tone without atrophy, negative straight leg raises, and full range of motion throughout." (*Id.*)

The undersigned concludes that the record supports the ALJ's finding that Plaintiff does not meet the Listing 1.04 requirements.  The record does establish that Plaintiff underwent back surgery in 2001, but it also shows that Plaintiff was able to continue working until September 24, 2019. (Dkt. No. 5-1 at 239, Ex. 2E.)  Further, the consultative examiner, Dr. Calvo, determined in January 2020, that a neurological examination revealed that Plaintiff showed no evidence of radiculopathy (*id.* at 339, Ex. 1F), no need for a cane to ambulate (*id.*), and upper and lower extremity strength of 4/5 (*id.*).  Dr. Calvo also indicated that it was difficult to evaluate handgrip and upper and lower extremity strength, but even when giving Plaintiff the benefit of the doubt, it was 4/5.  (*Id.*)  Further, Dr. Calvo reviewed Plaintiff's spine x-ray, finding no definite acute finding (*id.* at 340), chronic compression deformity of T7 (*id.*), and previous T11 corpectomy with fusion and spondylosis (*id.*).

Similarly, state agency medical consultants, Dr. Wright and Dr. Rowlands, in their respective exams from January 2020 and June 2020, did not find that Plaintiff met the Listing impairment.  Both Dr. Wright and Dr. Rowlands considered Listing 1.04 and determined that Plaintiff's medical examination did not support a finding that Plaintiff had such impairment. (Dkt. No. 5-1 at 105, Ex. 1A; at 116, Ex. 3A.)  The radiologist report of an MRI of Plaintiff's spine, from August 2020, revealed a bulging disc that made contact at the dural sac and a muscle spasm; however, the report also indicated there was no evidence of disc hernia and both the vertebral canal

and neuroforamina were broad, and "[s]pinal cord with normal thickness and intensity." (*Id.* at 373-74, Ex. 7F.)

Plaintiff does not point to any evidence showing that he meets the criteria of Listing 1.04. Rather, Plaintiff states that Plaintiff's treating physician, Dr. Garcia Guerra had been treating Plaintiff for pain due to ongoing disc deterioration, and if such evidence would have been considered, the ALJ would have concluded that Plaintiff met 1.04 Listing. (Dkt. No. 13 at 5-6.) However, Dr. Garcia Guerra's medical records do not indicate any disc deterioration finding; rather, Dr. Garcia Guerra states that Plaintiff has been a regular patient for more than 20 years and since 2018 has been treated every two weeks for severe back pain as result of surgery for spinal fracture that Plaintiff suffered 18 years ago. (Dkt. No. 5-1 at 353, Ex. 3F.) Further, Dr. Garcia Guerra states that "[Plaintiff] has been managed with different therapies to control the pain and improve his function." (*Id.*) Dr. Garcia Guerra does state that Plaintiff "presents with a motor function disability that makes it impossible for him to perform all types of work activities that imply physical exertion," but this conclusion is a broad statement without stating with specificity the exact physical ailment or condition that prevents Plaintiff from working. (*Id.*)

Plaintiff must satisfy all requirements to be considered impaired under a listing. *See Zebley,* 493 U.S. at 530. Contrary to Plaintiff's claim, the records from Dr. Garcia Guerra does not establish the sufficient evidence to justify the listing; accordingly, ALJ's finding that Plaintiff did not meet Listing 1.04 criteria is supported by the record and should be upheld.

### e.  Review of ALJ's RFC Determination

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). The ALJ is responsible for determining a claimant's RFC, which represents "an individual's ability to

perform activities despite the limitations imposed by an impairment." *Brown v. Barnhart*, 372 F. Supp. 2d 957, 974 (S.D. Tex. 2005) (citations omitted).  In making this finding, the ALJ must consider all of claimant's impairments, including impairments that are not severe.  *See* 20 C.F.R. §§ 404.1520(e), 404.1545; SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

An individual's RFC is "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Irby v. Barnhart*, 180 F. App'x. 491, 493 (5th Cir. 2006) (citing SSR 96–8p, 1996 WL 374184, at *2).  Any conflicts between the claimant's testimony and the medical records are for the Commissioner to resolve.  *Selders*, 914 F.2d at 617 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)).  "The ALJ is not required to show that the RFC is compatible with all of claimant's self-reported symptoms, but instead to evaluate that testimony in the context of objective medical evidence and determine the remaining capacity for work." *Crista B. v. Berryhill*, No. 1:18-CV-00042-BP, 2019 WL 2996553, at *4 (N.D. Tex. June 19, 2019), *report and rec. adopted sub nom. Crista B. v. Saul*, No. 1:18-CV-042-C-BP, 2019 WL 2996021 (N.D. Tex. July 9, 2019) (citing *Newton*, 209 F.3d at 452).

Here, the Plaintiff argues that the ALJ improperly determined the Plaintiff's RFC without adequately considering Plaintiff's treating physician assessment. (Dkt. No. 13.)  Plaintiff argues that he is unable to perform the work based on the RFC determination and the ALJ's conclusion that Plaintiff can perform such work is erroneous and unsupported by evidence on the record. (*Id.*)

The ALJ determined that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b),[10] except the Plaintiff can stand and walk 4 hours, and sit for 6 hours in an

_____

[10] *See supra* n.5.

8-hour workday and requires the ability to alternate positions between sitting and standing every 30 minutes. (Dkt. No. 5-1 at 37.) The ALJ also concluded that Plaintiff can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. (*Id.*) The ALJ considered the Plaintiff's symptoms along with the medical opinions and prior administrative findings and whether the medical findings were consistent with the pain and symptoms complained of by Plaintiff. (*Id.*) Based on the medically determinable impairments, ALJ concluded that such impairments could reasonably be expected to cause the alleged symptoms reported by Plaintiff; however, the Plaintiff's statements concerning intensity, persistence, and limiting effects of these symptoms were not consistent with medical evidence and other evidence in the record. (*Id.* at 38.)

### i. Review of Medical Records after March 27, 2017

All social security claims filed on or after March 27, 2017, are required to apply the new SSA rules regarding evaluation of medical records and evidence. 20 C.F.R. § 404.1520c. "[T]he Administration revised the procedures and standards for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c(a)). As such, ALJs are "no longer required to give controlling weight" to the opinions of treating physicians. *Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *3 (S.D. Tex. Nov. 26, 2021) (citation omitted)). Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources. *Id.* at *3 (citing 20 C.F.R. § 404.1520c(b)(2)).

The factors the ALJ must consider when determining the persuasiveness of a treating physician's opinion and prior medical findings are: (1) supportability; (2) consistency; (3) the

source's relationship with the patient; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion. 20 C.F.R. § 404.1520c(c). The most important factors which require explicit explanation include supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). While ALJs need not exhaustively explain their reasoning, they must "explain how [they] considered the supportability and consistency factors for ... medical opinions ... in [a claimant's] determination or decision." *Keith R. M. v. Kijakazi*, No. 3:21-CV-00178-E-BT, 2022 WL 4370453, at *3 (N.D. Tex. Aug. 9, 2022*), report and rec. adopted*, No. 3:21-CV-00178-E-BT, 2022 WL 4369984 (N.D. Tex. Sept. 21, 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). "The measuring stick for an 'adequate discussion' [of supportability and consistency] is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding regarding the particular medical opinion was supported by substantial evidence and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Luckett*, 2021 WL 5545233, at *4 (quoting *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620, at *6 (S.D. Miss. Sept. 15, 2021)). With respect to "supportability," "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Luckett*, 2021 WL 5545233, at *4 (internal quotation marks and citations omitted).[11] The regulations provide that "consistency" is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citation omitted).[12]

---

[11] "Supportability" is defined as follows: "The more relevant the objective medical evidence and supporting explanation presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[12] "Consistency" is defined as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be." 20 C.F.R. §

ii.  ALJ's Review of Medical Records

Plaintiff challenges the ALJ's finding that Dr. Garcia Guerra's opinion was unpersuasive, arguing that the ALJ failed to consider their longstanding relationship and history of treatment. (Dkt. No. 13 at 7-9.) Further, Plaintiff argues that the ALJ did not provide a sufficient reason for rejecting such opinion, and only considered Dr. Calvo's medical report. (*Id.*)

The ALJ first considered the medical consultant reports, Dr. Wright and Dr. Rowlands, which concluded that the Plaintiff was capable of performing the RFC outlined above.  (Dkt. No. 5-1 at 40.)  The ALJ concluded that because the assessments were supported by narrative disability determinations and were consistent with the objective and physical examination findings as well as the Plaintiff's reported daily activities, the assessments were somewhat persuasive.  (*Id.*)  Then, the ALJ found Dr. Calvo's assessment not very persuasive due to its "vague nature and reported difficulties with assessing some of the claimant's functional abilities."  (*Id.*)  Finally, the ALJ considered both the March and November 2020 letters from Dr. Garcia Guerra, which opined that Plaintiff was unable to perform all types of work activities involving physical effort or exertion due to a "motor function disability."  (*Id.* at 40-41.)

The ALJ was not persuaded by Dr. Garcia Guerra's findings because it included an excessive limitation that was not supported by any evidence in the record, including Plaintiff's own reports of his daily activities.  (*Id.*)  Further, Dr. Garcia Guerra's report was unpersuasive because it was brief and conclusory.  (*Id.*)  Importantly, the ALJ found it unpersuasive when compared to other medical assessments and reports provided.  As such, the ALJ concluded that while Plaintiff is limited to some degree, the record does not support that Plaintiff's limitations are as severe as Dr. Garcia Guerra or Plaintiff allege.  (*Id.* at 41.)

---

404.152c(c)(2).

While the Plaintiff argues that Dr. Garcia Guerra's medical assessment should have been given more weight than the other medical assessments due to the long-standing relationship between Dr. Garcia Guerra and Plaintiff, that is only one factor considered when determining the persuasiveness of the treating physician's report. 20 C.F.R. § 404.1520c(3)(i). The most important factors, supportability and consistency, did not support finding Dr. Garcia Guerra's opinion persuasive when analyzed by the ALJ. 20 C.F.R. § 404.1520c(b)(2). The ALJ explicitly explained that regarding supportability, Dr. Garcia Guerra's assessment contained no objective medical evidence or explanation in support of the excessive limitation asserted. Specifically, Dr. Garcia Guerra provided no medical evidence in support of his opinion and no medical evidence from other examining physicians supported Dr. Garcia Guerra's conclusion. (Dkt. No. 5-1 at 40-41.) As stated by the ALJ, Dr. Garcia Guerra's assessment was "brief, conclusory, and inadequately supported by the evidence as a whole." (*Id*. at 41.)

The ALJ considered the consistency of Dr. Garcia Guerra's medical opinion by looking at the entire record and whether the opinion was supported by other evidence in the record. (*Id*. at 40-41.) The Plaintiff argues that the ALJ failed to identify the objective evidence that did not support Dr. Garcia Guerra's assessment. (Dkt. No. 13 at 7.) However, the ALJ did identify multiple objective evidence findings that did not support Dr. Garcia Guerra's extreme limitations. Specifically, the ALJ explained that Dr. Garcia Guerra's medical assessment was inconsistent with the medical consultants' findings, which, unlike Dr. Garcia Guerra's findings, were supported by objective medical evidence such as grip strength evaluations and other physical testing which objectively supported that Plaintiff was not as physically limited as Dr. Garcia Guerra alleged. (Dkt. No. 5-1 at 37-39.)

Further, the ALJ's explanation regarding inconsistency and supportability certainly "enables the court to undertake a meaningful review of whether [the ALJ] finding regarding a particular medical opinion was supported by substantial evidence and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Luckett*, 2021 WL 5545233, at *4 (quoting *Cooley*, 2021 WL 4221620, at *6).  Based on the foregoing, ALJ considered all of the evidence in the record and ultimately found both Dr. Garcia Guerra's and Dr. Calvo's assessments either unpersuasive or only partially persuasive.  The ALJ adequately explained in her decision that the reason for her conclusion was based on the inconsistencies and lack of objective evidence in support of both medical opinions.

Substantial evidence supports the ALJ's decision to give less weight to Dr. Garcia Guerra's medical determination in light of the reports from the state examiners.  *Newton*, 209 F.3d at 455 (citing *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994) ("'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'")).  And the ALJ adequately explained her reasoning for finding Dr. Garcia Guerra's medical conclusions unpersuasive compared to other medical assessments presented.  *See* SSR 96-8p, 1996 WL 374184 at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  Therefore, the assessment made by the ALJ as to Plaintiff's RFC should be affirmed.  *Cf. Vasquez v. Comm's of Soc. Sec.*, No. 7:21-cv-00028-O-BP, 2022 WL 2975471, at *5 (N.D. Tex. June 30, 2022) (citation omitted) ("What matters is that the ALJ's conclusions are supported by at least one medical opinion and are grounded in substantial evidence.").

## f.  **Two-Step Process to Determine Disability**

As outlined within this report, it is also clear that the ALJ appropriately followed the two-step process in evaluating whether or not Plaintiff was disabled.   When an individual alleges impairment-related symptoms, ALJ must evaluate those symptoms using a two-step process:

> First, we [SSA] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . .

SSR 16-3p, 2017 WL 5180304, at *2-3 (Oct. 25, 2017).  In this review, the SSA "will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we [SSA] will evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id.* at *6.  ALJ, after reviewing both the statements of Plaintiff and the medical records, concluded that said statements were not consistent with the medical evidence presented. *Id.* at *12 (referencing RFC determination pursuant to 20 C.F.R. § 404.1545).  ALJ outlined the rationale for her decision and explained while not disabled, Plaintiff's work ability was limited based on review of the medical records presented. (Dkt. No. 5-1 at 40-41.)  Thus, the determination should be affirmed not only based on substantial evidence to support the decision but also due to ALJ following the appropriate legal standard and regulations. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *see also* 42 U.S.C. § 405(g).

## **CONCLUSION**

### *Recommended Disposition*

Based on review of the record, for noted reasons, the undersigned concludes that there is no genuine dispute as to any material fact as alleged by Plaintiff and therefore Defendant's Cross

Motion for Summary Judgment (Dkt. No. 14) should be **GRANTED** and Plaintiff's Motion for Summary Judgment (Dkt. No. 13) should be **DENIED**. *Shaw Constructors*, 395 F.3d at 539.

It is further recommended that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** with prejudice, and the case be closed.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The Clerk shall send a copy of this Order to respective Counsel for Plaintiff and Defendant.

**DONE** at McAllen, Texas, this 2nd day of August 2023.

Juan F. Alanis
United States Magistrate Judge